**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SHAWN ABNER, on behalf of himself and others similarly-situated, | : | Case No. 1:18-cv-442 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CONVERGYS CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**ORDER**

This civil action is before the Court on Plaintiff's pre-discovery motion for conditional class certification and court-supervised notice to putative class members pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Doc. 52), and the parties' responsive memoranda. (Docs. 86, 89). Also pending before the Court is Defendant Convergys Corporation ("Convergys")'s amended motion to strike collective and class action claims (Doc. 77), and the parties responsive memoranda. (Docs. 87, 93).

**I.      BACKGROUND**

Plaintiff Shawn Abner brings this action under the FLSA, and related state wage laws, on behalf of a putative class of similarly situated individuals seeking to recover overtime wages and liquidated damages. (Doc. 1 at ¶ 1).

Defendant Convergys is a world leading customer management outsourcing business that operates call centers to provide customer support on behalf of clients. (*Id.* at ¶ 21). Convergys operates throughout the United States, including Cincinnati, OH.

(*Id.* at ¶ 22).  Plaintiff Abner was employed by Convergys[1] from approximately 2017 until February 2018.  (*Id.* at ¶ 24).  Plaintiff's duties consisted of answering phone calls made by Convergys' clients' customers, answering customer inquiries, troubleshooting on behalf of customers, and generally assisting customers.  (*Id.* at ¶ 23).

Plaintiff alleges that he, and the putative class members, worked forty on-the-clock hours per week.  (*Id.* at ¶ 26).  Additionally, Plaintiff contends that he and the putative class members worked an additional three-and-a-half to five hours of off-the-clock work per week and were not compensated for that time.  (*Id.* at ¶ 27).

Plaintiff contends that the putative class members have not been compensated for all the hours they work at Convergys due to Convergys' corporate policy and practice of requiring all call-center employees to be ready to take their first phone call the moment their official shifts start.  (*Id.* at ¶ 28).  The putative class members allegedly have been required to start and log into their computers, open multiple different Convergys computer programs, log in to each Convergys program, and ensure that each Convergys program is running correctly in order to take their first phone calls.  Plaintiff contends that this process takes up to thirty minutes.  (*Id.* at ¶ 29).

Plaintiff also alleges that Convergys has enforced a policy and practice requiring the putative class members to clock out any time they leave their desk, including any time they leave their desk to go to the bathroom.  (*Id.* at ¶ 32).  Additionally, Plaintiff alleges

---

[1] Defendant Convergys clarifies that Plaintiff Abner was in fact employed by Convergys Management Group, Inc. ("CMG"), which is a subsidiary of Convergys.  (Doc. 86 at 2).  Plaintiff contends that Convergys is the correct employer, but agrees to include CMG in the notice.  (Doc. 89 at 1).  The Court agrees with Plaintiff's approach at this stage.

that, while the putative class members have been offered two fifteen-minute breaks per day, they are not compensated for those breaks.  (*Id.* at ¶ 33).

As a condition of his employment, Plaintiff Abner signed agreements stating that he would not pursue any collective or class action lawsuit against Convergys or its subsidiaries.  In relevant part, the agreements signed by Plaintiff provide:

> I further agree that I will pursue any lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will not lead, join, or serve as a member of a class or group of persons bringing such a lawsuit.

(Doc. 77-2 at PAGEID # 845).

> I further agree that **I will** pursue any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will **not lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit.**

(*Id.* at 848).

## II.     MOTION TO STRIKE COLLECTIVE AND CLASS ACTION CLAIMS

As an initial matter, the Court will consider Convergys' motion to strike Plaintiff's collective and class action claims.  (Doc. 77).  Convergys argues that because Plaintiff's employment agreements contain a waiver of his right to pursue collective or class action claims against Convergys, Defendant's motion to strike should be granted.  (Doc. 77-1). Therefore, the Court must determine whether the Plaintiff's waiver of the right to join, lead, or serve as a member of a class or collective action is enforceable.  (Doc. 77-2 at PAGEID # 845, 848).

The employment agreements indisputably contain waivers of Plaintiff's right to "lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit." (*Id.*). Convergys cites to several cases where Convergys' collective and class action waiver has been upheld by other courts. (Doc. 77-1 at 4–5). However, every single case cited by Convergys was decided outside of the Sixth Circuit. *See Convergys Corporation v. NLRB*, 866 F.3d 635 (5th Cir. 2017); *Palmer v. Convergys Corp.*, No. 7:10-cv-145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012); *Dimery v. Convergys Corp.*, No. 4-17-cv-701, 2018 WL 1471892 (D. S.C. Mar. 26, 2018). Yet Sixth Circuit precedent applies here. Within the Sixth Circuit, any collective or class waiver in an employment agreement without an arbitration provision is invalid. *Killion v. KeHE Distributors, LLC,* 761 F.3d 574, 592 (6th Cir. 2014), *cert. denied,* ––– U.S. ––––, 135 S.Ct. 1745, 191 L.Ed.2d 703 (2015)). Here, it is undisputed that neither of the employment agreements contain an arbitration provision.

Recently, a Southern District of Ohio court—in the context of a Plaintiff asserting both a FLSA collective action claim and a state class action claim—held "that class waivers without an arbitration provision are not valid." *Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 892 (S.D. Ohio 2018) (citing *Killion*, 761 F.3d at 592). In *Hall*, the district court, relying on *Killion* and *Boaz v. FedEx Customer Info. Serv., Inc.*, 725 F.3d 603, 605 (6th Cir. 2013), found that a waiver, such as the one before the Court, is unenforceable. Therefore, Sixth Circuit and Southern District of Ohio precedent clearly holds that the waivers found in Convergys' employment agreements signed by

4

Plaintiff Abner are unenforceable.

Nevertheless, Convergys contends that the Sixth Circuit's decision in *Killion* has "arguably" been undone by the Supreme Court's recent decision in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018). Convergys contends that *Killion* relies on two principles in its holding that class and collective action waivers are unenforceable without an arbitration provision: "1) the right to litigate a FLSA claim as a collective action is a substantive right under the FLSA – equivalent to an employee's right to avail himself of the entire statute of limitations provided by statute – and such a substantive right cannot be waived; and 2) the Court should strike down "restrictions on the employees' FLSA rights that would have the effect of granting their employer an unfair advantage over its competitors." (Doc. 77-1 at 6 (footnote omitted) (quoting *Killion*, 725 F.3d at 592)). Convergys argues that these principles have been undone by *Epic*. However, Convergys' arguments lack merit. Indeed, as the Court will examine below, the Supreme Court's decision in *Epic*, which upheld collective and class action waivers in arbitration agreements, accords with the Sixth Circuit's reasoning in *Killion* and *Boaz*.

First, Convergys argues that in *Epic* the Supreme Court held that the FLSA's collective action mechanism is a procedural rule, which can be waived, not a substantive right. Upon review, the Supreme Court's decision in *Epic* does not specifically distinguish between procedural rights and substantive rights. Instead, Convergys relies on the Tenth Circuit's interpretation of *Epic* which found that "whether a claimant can proceed on behalf of a class is classically a matter of procedural rule, not a substantive

5

right." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1254 (10th Cir. 2018) (citing *Epic*, 138 S. Ct. at 1624–25)).

However, the Sixth Circuit has specifically rejected the argument that there is a distinction between procedural rights and substantive rights under the FLSA. *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606 (6th Cir. 2013) (regarding a defendant's argument that an employee can waive procedural rights, but not substantive rights, the Sixth Circuit held that the "FLSA caselaw does not recognize any such distinction."). Accordingly, Convergys' argument that *Killion* has been undone by *Epic* because *Killion* purportedly relied on some distinction between procedural rights and substantive rights fails.

Second, Convergys argues that *Epic* "dismantled the notion that a collective or class action waiver is impermissible under the FLSA because it provides the employer an unfair advantage." (Doc. 77-1 at 9). In *Killion*, the Sixth Circuit reasoned:

> Because no arbitration agreement is present in the case before us, we find no countervailing federal policy that outweighs the policy articulated in the FLSA. The rationale of *Boaz* is therefore controlling. *Boaz* is based on the general principle of striking down restrictions on the employees' FLSA rights that would have the effect of granting their employer an unfair advantage over its competitors. Requiring an employee to litigate on an individual basis grants the employer the same type of competitive advantage as did shortening the period to bring a claim in *Boaz*. And in cases where each individual claim is small, having to litigate on an individual basis would likely discourage the employee from bringing a claim for overtime wages. *Boaz* therefore controls the result here where arbitration is not a part of the waiver provision.

761 F.3d at 592.

6

Convergys contends that this reasoning has been undone by *Epic*. As Plaintiff notes, Convergys does not cite to any portion of *Epic* to support this "unfair advantage" argument. The Court finds that nothing in *Epic* overturns the Sixth Circuit's reasoning in *Killion* regarding why class and collective action waivers outside of arbitration agreements are unenforceable.

To cast away any doubt that *Epic* effectively overturned *Killion*, the Sixth Circuit has already reconciled *Epic* with the Sixth Circuit's precedent on collective and class action waivers in cases brought under the FLSA:

> To avoid the plain import of Epic's holding, Gaffers urges us to consider this circuit's FLSA precedent. *See Killion v. KeHE Distribs., LLC*, 761 F.3d 574 (6th Cir. 2014); *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603 (6th Cir. 2013). He claims that these cases establish that one-on-one arbitration agreements are illegal under the FLSA and thus unenforceable under the savings clause. *See Killion*, 761 F.3d at 590–92; *Boaz*, 725 F.3d at 606–07. Accordingly, he contends that if the Court addressed these cases, its view about the savings clause would be different when it comes to the FLSA. This argument fails. Even if Gaffers is correct about the holdings of those cases, *Epic* clearly overrules them because they would "target arbitration." 138 S.Ct. at 1622. But more importantly, Gaffers is wrong about the holdings of those cases. In *Killion*, we analyzed a waiver of FLSA collective-action rights in separation agreements. But the FLSA waiver in those agreements did not include any provision for arbitration at all. *Killion*, 761 F.3d at 591. We even noted "considerations change when an arbitration clause is involved." *Id.* And in *Boaz*, we affirmed that a FLSA waiver may be enforceable when, like here, a waiver does provide for arbitration. 725 F.3d at 606; *accord Killion*, 761 F.3d at 591; *see also Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000). Thus, our circuit's FLSA precedent does not prevent enforcement of the arbitration agreements in this case.

*Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 297 (6th Cir. 2018).

In light of Sixth Circuit precedent, the collective and class action waiver in Convergys' employment agreements is unenforceable. Accordingly, the Court finds that Convergys' motion to strike collective and class action claims (Doc. 77) is wholly without merit and is therefore denied.

## III. MOTION FOR CONDITIONAL CLASS CERTIFICATION

The FLSA allows employees, under certain circumstances, to collectively sue an employer to recover unpaid overtime compensation. *See* 29 U.S.C. § 216(b). The statute provides in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.... An action to recover ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Accordingly, Section 216(b) establishes two requirements for a collective action: (1) the plaintiffs must be "similarly situated" and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

The Sixth Circuit has implicitly upheld a two-step procedure for determining whether an FLSA case should proceed as a collective action. *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14–cv–432, 2015 WL 4112312, at *2, 2015 U.S. Dist. LEXIS

88205, at \*6 (S.D. Ohio July 7, 2015) (Sargus, J) (citing *In re HCR ManorCare, Inc.*, No. 11–3866, 2011 WL 7461073, 2011 U.S. App. LEXIS 26241 (6th Cir. Sept. 28, 2011)). First, in what is referred to as the "initial notice stage," the Court must determine whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011). At the second stage, the defendant may file a motion to decertify the class if appropriate to do so based on the individualized nature of the plaintiffs' claims. *Id.*

**A. Similarly Situated**

At the first stage, which is the stage at issue here, a plaintiff must only make a "modest showing that they are similarly situated to the proposed class of employees." *Lewis v. Huntington Nat. Bank*, 789 F.Supp.2d 863, 867 (S.D. Ohio 2011) (Marbley, J). This standard is "fairly lenient" and "typically results in conditional certification." *Id.* (quoting *Comer*, 454 F.3d at 547). Ultimately, the issue of whether to grant conditional certification is in the district court's discretion. *Comer*, 454 F.3d at 546. When considering a pre-discovery motion for conditional certification, the Court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility. *Swigart*, 276 F.R.D. at 214. Requiring additional factual support, or weighing the defendant's competing factual assertions prior to discovery, would "intrude improperly into the merits of the action." *Lacy v. Reddy Elec. Co.*, No. 3:11–cv–52, 2011 WL 6149842, at \*3, 2011 U.S. Dist. LEXIS 142050, at \*8 (S.D. Ohio Dec. 9, 2011) (Rice, J) (citing *Murton v. Measurecomp LLC*, No. 1:07-cv-3127, 2008 WL 5725631, at

*5 (N.D. Ohio June 9, 2008)).

Although the FLSA does not define "similarly situated," the Sixth Circuit has found that employees are similarly situated if they "suffer from a single, FLSA-violating policy" or their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Ford v. Carnegie Mgmt. Servs.*, No. 2:16–cv–18, 2016 WL 2729700, at *2 (S.D. Ohio May 11, 2016) (Jolson, MJ) (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)).

Here, Plaintiff's proposed definition of the putative class members is:

> All hourly call-center employees who have been employed by Convergys Corporation, anywhere in the United States, at any time from June 28, 2015 through the final disposition of this matter.

(Doc. 52 at 1).

To support its assertion that the putative class members are similarly situated, Plaintiff has submitted evidence in the form of declarations of seventeen opt-in plaintiffs which address the individual's job duties, hours worked, and purport to show that each individual was subject to a Convergys policy that prohibited them from going on the clock until they were ready to receive client calls. (Docs. 53-1–53-17). The Court finds that this evidence meets the Plaintiff's "modest" burden of showing that he is similarly situated to the putative class members.

Convergys offers three arguments why the collective class action should not be conditionally certified: (1) the putative class inappropriately lumps together agents and

10

their supervisors; (2) plaintiff cannot establish a common unlawful policy; and
(3) individualized legal and factual inquiries necessary to adjudicate Plaintiff's
claims would thwart the purpose of collective litigation. (Doc. 86 at 7–18).

First, Plaintiff states that he seeks certification of only Convergys' customer
service agents and those individuals who are required to take, or make, phone calls on
behalf of Convergys' clients' customers. Convergys contends that the putative class
members inappropriately includes supervisors. Convergys points to the declaration of
Jose Salinas, who identifies himself as a team leader at Convergys (Doc. 53-12), and
contends that Salinas did not interact with Convergys' customers on Convergys' behalf
via telephone. However, Salinas' duties did consist of listening into calls made by his
team members. Salinas also states that he was required to perform work off-the-clock,
including logging into and starting up his computer, which is the same alleged violation
of the FLSA as the Plaintiff and putative class members. As observed by the Sixth
Circuit, "[t]he plaintiff must show only that his position is similar, not identical, to the
positions held by the putative class members." *Comer,* 454 F.3d at 546 (internal
quotation marks and citation omitted).

At this stage, the Court finds that Plaintiff has not inappropriately included
supervisors, administrators, human resource professionals, or internal IT support
employees in the putative class and has shown that he is similarly situated to putative
class members who are customer service agents and individuals required to take, or
make, phone calls on behalf of Convergys' clients' customers. Discovery may ultimately

show otherwise, but Plaintiff has met his burden at the conditional certification stage.

Second, Convergys contends that there is no common unlawful policy requiring all hourly call-center employees to work ten to thirty minutes pre-shift without recording that time. Convergys also states that the only common Convergys policy was that all agents record all their work time, that all agents' start time is automatically recorded, and that Convergys pays time-and-a-half for all hours worked over forty in a workweek. Furthermore, Convergys relies on "happy camper" affidavits to suggest that "there is no evidence the class members were victims of a common policy or unified theory." (Doc. 86 at 14). However, district courts regularly reject "happy camper" defenses at the conditional certification stage. *See, e.g., Fitch v. Carey Counseling Ctr., Inc.*, 2018 WL 4945243, at *3 (W.D. Tenn. Jan. 10, 2018) ("the 'happy camper' defense has been soundly rejected at this notice stage"); *Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 840 (N.D. Ohio 2011) ("[j]ust as courts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs, it is no more helpful for the employer to round up a small sample of favorable statements from employees").

Each of these arguments regarding Convergys' common policies relates to the merits of Plaintiff's claim and are not relevant at this stage of the proceedings. *See Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 876 (S.D. Ohio 2017). As a district court within the Sixth Circuit has found in a similar FLSA action relating to call-center employees, "[p]laintiffs need not show that the challenged policy is in writing. Likewise,

that Defendant has a procedure for obtaining overtime compensation that Plaintiffs could use and has a written Code of Business Conduct that prohibits 'off-the-clock' work, does not preclude conditional certification." *Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009). Accordingly, Plaintiff has met his burden to demonstrate that the putative class members suffer from a single, FLSA-violating policy that stems from a common Convergys policy or practice.

Third, Defendant argues that certification is improper because this case will require an individualized factual inquiry into each putative class member. (Doc. 86 at 15–). But according to the Sixth Circuit, "such a collection of individualized analysis is required of the district court." *O'Brien*, 575 F.3d at 584 (rejecting employer's argument that conditional certification was improper when it would require an individual analysis that examines the facts of each alleged violation). At the conditional certification stage, a plaintiff is only required to show that claims of the proposed class are unified by common theories of a defendant's FLSA violations, even if proofs of the theories are inevitably individualized and distinct. *Id.* at 585.

Here, the claims of Plaintiff and the putative class are unified by the common theory that Convergys violated the FLSA by requiring employees to start up and log into their computers prior to clocking in for work. At the conditional certification stage, that is a sufficient showing even though proof of each violation will require an individual factual inquiry. *Id.* at 584.

As this Court has noted, "[i]f discovery later shows the claims in this case to be so

individualized as to render a collective action unmanageable, the defendant may move to decertify the collective action at the second stage of certification proceedings." *Hamm*, 275 F. Supp. 3d at 877 (citing *Petty v. Russell Cellular, Inc.*, No. 2:13–cv–1110, 2014 WL 1308692, at *5 (S.D. Ohio March 28, 2014) (Graham, J)). At this initial stage, Plaintiff has established that he is similarly enough situated to proceed collectively through discovery.

Accordingly, Plaintiff's motion to conditionally certify this collective action is granted.

### B. Form of Notice

Courts may facilitate notice to putative collective class members so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on the merits. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

Here, Convergys objects to Plaintiff's proposed notice on seven grounds, the Court will address each in turn.

#### (1) Plaintiff's requested contact information

Plaintiff seeks to obtain the names, addresses, email addresses, telephone numbers, and social security numbers for putative class members and seeks to send notice by postal mail and e-mail. Convergys contends that this request is overbroad, duplicative, and unnecessarily intrusive to the privacy rights of Defendant's employees. (Doc. 86 at 19–20). The Court agrees with Convergys regarding Plaintiff's request for the telephone

14

numbers and social security numbers of putative class members and that request is therefore denied.

However, the Court will follow the growing trend to allow postal mail and e-mail service upon putative class members as it increases the likelihood that putative class members receive notice and may obviate the need to resend notice if a putative class member's address is inaccurate. *Hall*, 299 F. Supp. 3d at 899 ("This Court has followed the trend and will continue to allow mail and email notice to the putative class members."). Accordingly, Plaintiff may send notice by postal mail and e-mail to putative class members.

### (2) Plaintiff's proposed "Appraisal of Responsibilities"

Convergys argues that the proposed notice omits important information regarding putative class members' potential risks and responsibilities. Convergys contends that the notice should include that putative class members "could be liable for costs and expenses and they would be required to participate in the litigation." (Doc. 86 at 21). Yet Plaintiff notes that the proposed notice advises putative class members that this case is being litigated on a contingency basis and that they are not responsible for any fees. Therefore, the Court finds that Defendant's proposed language that putative class members could be liable for costs and expenses is incorrect and therefore this request is denied.

However, Plaintiff agrees to modify the notice to include the following sentence: "If you choose to join the lawsuit, you may be required to participate in written discovery and/or attend a deposition. You may also be required to attend a trial." (Doc. 89 at 14).

15

The Court finds that this additional language is appropriate and should be added to the notice.

### (3) Plaintiff's requested follow-up notice

Plaintiff requests that the Court allow him to send a court authorized follow-up notice to putative class members. While this Court has authorized a plaintiff to serve a follow-up notice, *see Hamm*, 275 F. Supp. 3d at 879 ("Plaintiff is authorized to serve the Reminder through the same means it served the Notice: by first class mail to current employees and by first class mail and electronic mail to former employees."), in that case the defendant did not oppose the follow-up notice. Here, Convergys opposes Plaintiff's requested follow-up notice. This Court is cognizant that "[c]ourts should be hesitant to authorize duplicative notice because it may unnecessarily 'stir up litigation' or improperly suggest the Court's endorsement of Plaintiff's claims." *Hardesty v. Kroger Co.*, 2016 WL 3906236, at *2 (S.D. Ohio July 19, 2016) (quoting *Hoffman-La Roche*, 493 U.S. at 168–69)).

The Court finds that a follow-up notice is improper in this case as it may unnecessarily stir up litigation or improperly suggest this Court's endorsement, and, therefore, the Court denies Plaintiff's request for follow-up notice.

### (4) Plaintiff's requested posting requirement

Plaintiff requests that this Court require that Defendant post the notice in plain view at each of its call centers. (Doc. 52-1 at PAGEID # 539). While a district court within the Sixth Circuit has found that posting notice in a defendant's workplace is

redundant and unnecessary, *see Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011), other district courts have found this type of notice reasonable, observing that "[c]ourts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Redmond v. NPC Int'l, Inc.*, No. 13-cv-1037, 2016 WL 7223468, at *8 (W.D. Tenn. Dec. 13, 2015) (quoting *D'Antuono v. C&G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045, at *6 (D. Conn. Nov. 23, 2011); *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011)); *see also Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at *8 (M.D. Tenn. Jul. 10, 2015) (authorizing notice to be posted at place of work even though opt-in plaintiffs also receiving notice via mail or e-mail).

Here, the Court finds that Plaintiff's request to require that Defendant post the notice in its call centers is reasonable.

### (5) Defendant's request regarding denial of Plaintiff's claims

Plaintiff's proposed notice currently states: "Convergys denies Plaintiffs' allegations. Convergys contends that the Plaintiffs have been, and continue to be, properly paid under the FLSA." Defendant requests that the notice include a more detailed denial of the claims. Convergys requests that the following language be added: "Convergys contends that it requires all hourly call-center employees to accurately record all time worked, automatically records their employees' start time through Start of Shift and that the Plaintiffs have been, and continue to be, properly paid under the FLSA."

17

(Doc. 86 at 23).

"Courts frequently approve and even require that the notice include a statement that the defendant denies the allegations and complied with the FLSA in good faith." *Heaps v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2011 WL 1325207, at *9 (S.D. Ohio Apr. 5, 2011). Plaintiff states it will add the phrase "in good faith" to the sentence pertaining to Convergys' position in Section 2 of Plaintiff's proposed notice. The Court agrees with Plaintiff's approach as it will make clear that Convergys denies the allegations and complied with the FLSA in good faith. Defendant's request for an even more detailed denial is unnecessary.

### (6) Defendant's ability to communicate with its employees

Plaintiff's proposed order contains a provision that prohibits Convergys from "communicating directly or indirectly, with any Plaintiffs or Putative Class Members about any matters which touch or concern the outstanding wage claims, or other matters related to this suit, during the pendency of this lawsuit." (Doc. 52-3 at PAGEID # 548). Defendant argues that this is improper because Convergys is permitted to discuss compensation issues with its employees. Plaintiff argues, however, that this Court has a substantial interest in protecting current and potential class members from improper or misleading communications and retaliatory or coercive behavior. *See Hoffman-La Roche*, 493 U.S. at 171 ("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties."). "When the

18

exercise of this discretion, however, involves an order limiting a defendant's ability to communication with putative opt-in class members, a court must take into account the defendant's First Amendment rights and the defendant's right to defend the limitation." *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 650181, at *2 (N.D. Ohio Mar. 10, 2009)

At this point, Plaintiff has put forth no evidence suggesting a need to limit Convergys' communications with putative class members. The Court agrees with the district court's approach in *Jackson*, which found that a protective order prohibiting a defendant from communicating with potential opt-in class members was inappropriate where the plaintiff had provided no evidence of coercive, misleading, or improper communications by the employer. If Plaintiff eventually discovers evidence of coercive, misleading, or improper communications by Convergys, the Plaintiff should move this Court for a protective order. However, at this time, the language prohibiting Defendant from communicating with employees on issues such as compensation and timekeeping is unwarranted. Therefore, Convergys' request to alter the proposed order in this regard is well-taken.

### (7) Defendant's time to disclose contact information.

Finally, Convergys requests that the Court extend the period of time it has to disclose the contact information of potentially thousands of current and former employees from fourteen (14) days to thirty (30) days. In light of the large number of putative class members across the country, the Court finds that this request is reasonable.

*See LeFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-363, 2012 WL 4739534, at *12 (E.D. Va. Oct. 2, 2012) (providing defendant with thirty days to disclose putative class information instead of the proposed ten days). Accordingly, Plaintiff's request that Convergys disclose contact information of putative class members within fourteen days is denied. Defendant shall disclose contact information within thirty days of this Court's Order.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to strike collective class action claims (Doc. 77) is **DENIED**, and Plaintiff's motion for conditional class certification and court-supervised notice (Doc. 52) is **GRANTED in part** and **DENIED in part**. Specifically, the Court conditionally certifies the following class:

> All hourly call-center employees who have been employed by Convergys Corporation / Convergys Customer Management Group, Inc., anywhere in the United States, at any time three years prior to the date of this Court's Order through the final disposition of this matter.

Within thirty (30) days of this Court's Order, Defendant shall identify all Putative Class Members by providing a list in electronic and importable format, of the names, addresses, and all known e-mail addresses.

Plaintiff is authorized to send the Notice (with the changes detailed above) to Putative Class Members by postal mail and e-mail to putative class members.

Defendant's initial motion to strike collective and class action claims (Doc. 76) and Defendant's motion to stay Plaintiff's motion for conditional class certification (Doc.

78) are **DENIED as moot**.

**IT IS SO ORDERED.**

Date: _____4/11/19_____                    _____

                                                Timothy S. Black
                                                United States District Judge